# In the United States Court of Federal Claims

|   |   |
|---|---|
| ANDREA HOLLIDAY,<br><br>              *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>              *Defendant*. | No. 17-545C<br>(Filed: January 23, 2023) |

*Adam Holland*, Chattanooga, TN, for Plaintiff.

*Joshua Mandlebaum*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

      This case concerns the deed to a house in Chattanooga, Tennessee.  Compl. ¶ 4, ECF No. 1.  Mrs. Andrea Holliday ("Plaintiff") purchased the house in 2011 from the Department of Housing and Urban Development ("HUD") pursuant to a special warranty deed.  Def.'s App. ("App.") at 141–42, ECF No. 90-1.  Unbeknownst to either HUD or Mrs. Holliday, the City of Chattanooga had separately sold the property in a tax sale to another private owner, Mr. Carlton Ditto.  Compl. ¶ 15; App. at 27, 29 (summons for delinquent taxes).  Mrs. Holliday successfully quieted title, and now requests damages for HUD's failure to defend title in state court and for breach of the special warranty deed.  Compl. ¶¶ 29–33.

      Before this Court are the parties' cross-motions for summary judgment.  This Court finds that the special warranty deed did not obligate HUD to cure the tax lien, was not effective until after the tax sale, and did not warrant against Mr. Ditto's unsuccessful title claim.  Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**.  Defendant's Motion for Summary Judgment is **GRANTED**.

**I.    Background**

      In 2007, HUD insured a loan from CitiMortgage, Inc. ("Citi") to Joey and Ray Sapp to buy the property in Chattanooga, Tennessee.  Compl. ¶ 10.  When the Sapps purchased the house, there was an outstanding tax balance from 2006 owed to the City of Chattanooga.  Compl. ¶ 10; Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 5, ECF No. 90.  Even though $394.89

from the sale was reserved for payment of the tax balance, neither Citi (to whom all tax bills were sent) nor the Sapps paid it.  Compl. ¶ 11; Def.'s Mot. at 5.  So begins the row.

In 2010, the Sapps defaulted on their mortgage, and Citi foreclosed.  Compl. ¶ 12; App. at 13–16 (appointment of successor trustee).  On April 5, 2010, Citi prepared a trustee's deed that could be used to transfer title to HUD in the event of an insurance claim.  Compl. ¶ 13 (construing this date as the "effective date that HUD acquired ownership"); Def.'s Mot. at 5.  The deed was not recorded for four more months.  Def.'s Mot. at 6; App. at 61 (letter submitting deed for recording on August 10, 2010).

All the while, the back taxes were still outstanding.  Without HUD's knowledge, Chattanooga collected the balance via tax sale of the property in early 2010.  Compl. ¶ 15; App. at 27, 29 (summons for delinquent taxes).  On June 3, 2010, Mr. Ditto purchased the house subject to a one-year redemption period.  Compl. ¶ 15; Def.'s Mot. at 7.  To redeem the property, an interested party had one year to pay Chattanooga delinquent taxes, interest and penalties, court costs, and ten percent interest per annum ($928.52).  Compl. ¶ 15; Def.'s Mot. at 7.  Mr. Ditto waited, but no one redeemed the property.  Compl. ¶ 19; Def.'s Mot. at 3.

Meanwhile, Citi sought an insurance payment from HUD for the defaulted mortgage.  Def.'s Mot. at 7.  Citi had thirty days to convey the house to HUD after it foreclosed on the property.  Def.'s Mot. at 8.  This thirty-day period was extended three times with HUD's permission.  App. at 177–78 (response to Interrogatory No. 21) (requesting and receiving extensions on June 25, July 19, and August 5, 2010).  By August 10, 2010, Citi had successfully "(1) acquire[d] and provide[d] proof of good and marketable title; (2) acquire[d] possession of the property; and (3) clean[ed], repair[ed], secure[d], and/or improve[d] the property to the extent necessary to place it in 'conveyance condition.'"  App. at 177 (quoting 24 C.F.R. §§ 203.359(b)(1)).  On that date, Citi prepared its application for insurance benefits, *id.* at 57–58, and mailed the deed for recording, *id.* at 61.  HUD received the application on August 12, 2010, *id.* at 59, processed the claim on August 20, 2010, *id.* at 78, and paid the claim on August 23, 2010, *id.*

Eight months later, in April 2011, HUD sold the house to Mrs. Holliday.  *Id*. at 136–41.  She purchased the home pursuant to a special warranty deed and recorded the deed on May 19, 2011.  *Id.* at 141–42.  Then, Mr. Ditto asserted his claim.  After the expiration of the redemption period, Mr. Ditto recorded the decree confirming the tax sale.  Compl. ¶ 19.  Mrs. Holliday initiated a quiet title action against Mr. Ditto in Tennessee state court.  *Id*. at ¶ 22.  She named HUD as a defendant, asserting negligence and failure to deliver marketable title.  *Id*. at ¶ 23.  Those claims were dismissed, but she followed up with a letter demanding that HUD defend against Mr. Ditto's claim.  App. at 157–58 (April 17, 2013 letter).

The state trial court eventually granted summary judgment for Mrs. Holliday.  Compl. ¶ 27; *see Scott v. Ditto*, No. E201402390COAR3CV, 2016 WL 4572507, at *1 (Tenn. Ct. App. Aug. 31, 2016) ("*Ditto I*").  Mr. Ditto appealed, the appellate court vacated the judgment, and the trial court once again ruled in favor of Mrs. Holliday.  *Ditto I*, 2016 WL 4572507 at *6.  On remand, the trial court held that Plaintiff's title had priority both because she recorded her deed before Mr. Ditto recorded the tax sale decree, and because she was a bona fide purchaser without

notice of either the tax sale or Mr. Ditto's claim.  Compl. ¶ 28; *Scott v. Ditto*, No. E201701356COAR3CV, 2018 WL 6431766, at *1–2 (Tenn. Ct. App. Dec. 6, 2018).

## II.     Procedural Posture

Mrs. Holliday filed suit in this Court on April 18, 2017.  *See* Compl., ECF No. 1.  Judge Mary Ellen Coster Williams denied Defendant's Motion to Dismiss, ECF No. 10.  *See* May 31, 2018 Order, ECF No. 21.  Defendant first moved for summary judgment in 2018, Def.'s First Mot. for Summ. J., ECF No. 31, which Judge Coster Williams denied in favor of further discovery on liability, Aug. 16, 2019 Order, ECF No. 48.

This case was reassigned twice: first to Judge Richard A. Hertling, and then to the undersigned on February 28, 2022.  *See* Feb. 10, 2020 Order, ECF No. 53; Feb. 28, 2022 Order, ECF No. 83.  The parties now cross-move for summary judgment.  *See* Def.'s Second Mot. for Summ. J. ("Def.'s Mot."), ECF No. 90; Pl.'s Cross Mot. and Response ("Pl.'s Cross-Mot."), ECF No. 95; Def.'s Reply and Resp. ("Def.'s Reply"), ECF No. 98.

## III.    Legal Standards

### A.      Summary Judgment

Summary judgment is appropriate when no material facts are genuinely disputed.  Rule of the United States Court of Federal Claims 56(a).  The movant may satisfy their burden by pointing out the dearth of evidence in support of the nonmovant's case.  *See Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987).

### B.      Law of Decision

Interpretation of the special warranty deed is governed by federal law.  *See Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986) ("It is well settled that contracts to which the government is a party—and though a lease may concern and convey a property interest it is also very much a contract—are normally governed by federal law, not by the law of the state where they are made or performed.").  When federal law is not dispositive, the Court of Federal Claims can consider state law.  *Ginsberg v. Austin*, 968 F.2d 1198, 1200 (Fed. Cir. 1992) ("Since federal law does not answer the issue, we look to general property and contract law principles as they are embodied in state law pronouncements.").

Plaintiff asserts "there is no . . . [f]ederal law that concerns the interpretation of a special warranty deed."  Pl.'s Cross-Mot. at 13.  Instead, "any questions of the appropriate interpretation of a deed to real property must be governed by the laws of the state in which the real property is located."  *Id.*  However, contracts with the federal government are interpreted under federal law. *See Prudential*, 801 F.2d at 1298; *United States v. Allegheny Cnty., Pa.*, 322 U.S. 174, 183 (1944), *abrogated on other grounds by United States v. City of Detroit*, 355 U.S. 466 (1958) ("The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any state.") (collecting cases); *Kan. City Power & Light Co. v. United States*, 140 Fed. Cl.

3

791, 795–96 (2018) (finding that scope of indemnification provision is governed by federal law). Thus, state law informs this Court's decision only where federal law is lacking.

## IV. Discussion

The parties cross-move for summary judgment on whether the Government breached its obligations under the special warranty deed. The material facts are not in dispute. Pl.'s Cross-Mot. at 11. This case turns on the difference between special and general warranty deeds. In Defendant's words, "had HUD conveyed the house with a *general* warranty deed, th[e] outcome might be different." Def.'s Mot. at 20. Instead, Mrs. Holliday and HUD signed a special warranty deed, which imposes a far narrower obligation on HUD as the grantor. At issue is language in the special warranty deed obligating HUD to "warrant and forever defend against the lawful claims of all persons, claiming same, by, through or under [HUD] but no further or otherwise." Pl.'s Ex. 2, ECF No. 1-1.

There are three central disputes, all of which are independently dispositive. The parties first wrestle over whether HUD was responsible for failure to pay back taxes from 2006. It was not. Then, on the matter of ownership, they differ on when HUD's responsibility to "warrant and forever defend" inured to Plaintiff's benefit. *When* is August 2010. Finally, they diverge on how to interpret "lawful claims." Tennessee law equates lawful claims with successful ones, which precludes Mrs. Holliday's recovery before this Court.

### A. HUD Was Not Obligated to Cure the Tax Lien.

First, the deed did not obligate HUD to cure the tax lien. Mr. Ditto's interest—which arose from his purchase at the June 3, 2010 tax sale—stemmed from the previous owners' failure to pay taxes in 2006. Compl. ¶ 10. Citi, not HUD, was obligated to "pay all available tax bills prior to conveyance." App. at 38–41 (notice of tax sale). Unless explicitly stated in the special warranty deed, the grantor has "no implied obligation to cure [preexisting tax liens]." App. at 2279 (11 *Thompson on Real Property* ("*Thompson*") § 94.07(b)(2)(i) (2018)). Absent such a provision, the analysis falls back on property principles.

Special warranty deeds obligate grantors to "cure" tax liens only when the grantor "suffered it to be created by failing to pay." *Id.* (quotation marks omitted); Def.'s Mot. at 19. HUD's predecessors failed to pay taxes. Citi—again, not HUD—noticed the resultant tax sale. While general warranty deeds warrant against all title defects "no matter how, when, or by whom they may arise," special warranty deeds impose a far narrower obligation. App. at 2262 (14 *Powell on Real Property* §§ 81A.03[1][b][ii] (2018)). The unambiguous language of the operative deed absolves HUD of Plaintiff's proposed relief.

Alternatively, Plaintiff asserts that any "constructive knowledge" of the tax sale would bear on HUD's obligations. Pl.'s Cross-Mot. at 23; *see also id.* at 22 ("The Government was privy to information by its contractual involvement with the insured lender that, respectfully, Mrs. Holliday did not have."). Not so: "Even assuming [HUD] knew of this tax delinquency and knew the non-payment would result in a tax sale, the special warranty limited [HUD's] exposure to only those encumbrances [HUD] created or that existed because of something [it] did." *See Chi. Title Ins. v. Aurora Loan Servs., LLC*, 996 N.E.2d 44, 51 (Ill. App. Ct. 2013).

4

### B. Citi Conveyed the Deed to HUD in August 2010.

The parties also dispute the deed's chronology. Special warranty deeds oblige grantors to defend against lawful claims arising "by, through or under" the grantor. *See* Pl.'s Ex. 2. Here, Mr. Ditto's claims could not have arisen "by, through or under" HUD before it had title to the property.

There are three operative dates to determine when Citi conveyed the property. Citi created a deed document on April 5, 2010. App. 33–36 (April 5, 2010 deed). Mr. Ditto bought the property at a tax sale on June 3, 2010. App. 47 (report of June 3, 2010 sale). Over the course of August 2010, the deed to HUD was recorded, HUD determined that the insurance claim complied with regulations, and HUD paid the claim. App. 122 ("A deed to the Secretary of [HUD] was recorded on 08/10/2010."), 78 (claim history).

Plaintiff argues HUD's obligation started on April 5, 2010. Compl. ¶ 13; Pl.'s Mot. at 15–16. The deed was "dated, signed, and notarized on April 5, 2010." Pl.'s Cross-Mot. at 15 (citing App. 34–37 (unrecorded trustee's deed)). Or, at least, that is how the deed reads: "[T]he Government accepted a [deed] dated April 5, 2010 and chose to have said deed recorded in the Hamilton County, Tennessee Register of Deeds office." *Id.* If the operative date were sometime in August—as Defendant asserts—Plaintiff contends HUD "should have changed the date on the [deed] prior to its acceptance and recordation." *Id.* at 16. In part, Mrs. Holliday relies on Tennessee Code § 66-5-109: "The effective date of any conveyance of real property in this state is *presumed* to be the date of the instrument of conveyance." *Id.* (emphasis added).

Tennessee courts have not yet interpreted the presumption in § 66-5-109. However, both the unambiguous statutory language and Tennessee precedent on nearly identical presumptions elsewhere in real property law indicate that the § 66-5-109 presumption is rebuttable with evidence. *Cf., e.g.*, *Jack v. Dillehay*, 194 S.W.3d 441, 449 (Tenn. Ct. App. 2005) ("In interpreting [a similar provision], Tennessee courts have held that . . . a rebuttable presumption of ownership arises." (cleaned up)).

The Government rebuts the presumption in § 66-5-109. An erroneous date on a recorded deed does not vitiate the requirements for conveyance. In Tennessee, conveyance requires both delivery and acceptance. *See, e.g.*, *Wilson v. Winters*, 67 S.W. 800, 801 (1902). Citi may have signed the deed on April 5, 2010, but the "mere signing of the deed is not delivery." 21 C.J.S. *Deeds* § 72. Instead, "[d]elivery is a matter of intention, and intention is the test." *Couch v. Hoover*, 79 S.W.2d 807, 812 (Tenn. Ct. App. 1934). The only indication that conveyance occurred in April is that the "Government accepted a [deed] dated April 5, 2010." Pl.'s Cross-Mot. at 15. All other factors—notably, Citi's intention—indicate that conveyance actually occurred four months later in August 2010.

Citi was certainly preparing to convey the property to HUD in April 2010, but that preparatory work was nowhere near finished. Citi still needed to: "(1) acquire and provide proof of good marketable title to the property; (2) acquire possession of the property; and (3) clean, repair, and/or improve the property to the extent necessary to place it in 'conveyance condition.'" App. at 177 (response to Interrogatory No. 21). Citi also requested three extensions of time to put the property in "conveyance condition." Def.'s Reply at 9. Those requests—and Citi's

5

unfinished to-do list—sufficiently show that it did not intend to convey the property at that time. Whatever seeds were sown in April did not bloom until August.

This Court is sympathetic to Plaintiff's timeline of events and recognizes that the deed places conveyance in April. However, the law weighs "mere signing" against the "circumstances of the case." 21 C.J.S. *Deeds* § 72; *Couch*, 79 S.W.2d at 813. The June 3, 2010 tax sale occurred before Citi conveyed the property to HUD. As such, Mrs. Holliday's legal troubles did not occur by, through or under Defendant.

### C. Mr. Ditto's Claims Were Not Lawful.

Lastly, the parties read "lawful claims" differently. Plaintiff attempts to distinguish a claim's priority (whose title claim is first in line) from its lawfulness. Pl.'s Cross-Mot. at 21. Put simply, Mrs. Holliday wants a double victory: to succeed on title against Mr. Ditto and on warranty against HUD. *Id.* According to Plaintiff, the Tennessee state court did not adjudicate the lawfulness of Mr. Ditto's claim and, instead, assigned title based on priority. *Id.* Mr. Ditto's unsuccessful claim would still be "lawful" and trigger HUD's warranty to defend against all lawful claims. *Id.*

Tennessee law provides otherwise. Special warranty deeds obligate grantors to defend the grantee's title *only* against successful claims. Precedent abounds. *See King v. Anderson*, 618 S.W. 2d 478, 483 (Tenn. Ct. App. 1980) ("In the absence of fraud, suit cannot be brought for breach of such covenant unless the grantee has been subject to eviction."); *Myers v. Thomas*, No. 01A01-9111CH00412, 1992 WL 56993, at *5 (Tenn. Ct. App. Mar. 25, 1992) ("Because the plaintiffs have failed to show an eviction, either actual or constructive, no cause of action for the breach of warranty of title has yet accrued. . . . [P]laintiffs have not yielded possession to anyone asserting a better title."); *Thompson v. Thomas*, 499 S.W. 2d 901, 903 (Tenn. Ct. App. 1973) ("We recognize that it is established law that if the purchaser has not been evicted, in the absence of fraud or insolvency, he can have no remedy for a breach of warranty."); *McWhirter v. Swaffer*, 65 Tenn. 342, 349 (1873) ("Swaffer is still in possession, having never been evicted, and for this reason, in the absence of fraud or insolvency, can have no remedy against McWhirter upon his warranty against defects of title."); *Stipe v. Stipe*, 39 Tenn. (2 Head) 169, 170 (1858) ("The bill here alleges a covenant of warranty, but avers want of eviction. If this be so, there is no breach of the covenant.").

Similarly, courts outside Tennessee have grappled with precisely this question and arrived at the same conclusion: lawful means successful. *See, e.g.*, *Black v. Patel*, 594 S.E.2d 162, 164 (S.C. 2004) ("The general rule for cases in this context is that only 'lawful'—that is, successful—claims asserted against title justify an award of attorneys' fees where the covenantor has failed to defend."); *Nunes v. Meadowbrook Dev. Co.*, 24 A.3d 539, 543 (R.I. 2011) ("Courts in many jurisdictions interpret 'lawful claims' in the covenant to defend title, as meaning successful claims; pursuant to that interpretation, a grantor under a warranty deed does not promise to defend the grantee's title against all claims — but only those claims in which the claim against title is successful." (emphasis omitted)); *Sanpete Am., LLC v. Willardsen*, 269 P.3d 118, 130 (Utah 2011) ("The covenant of warranty dictates that a grantor shall defend title against 'lawful claims,' which this court has interpreted as meaning 'rightful claims.' . . . [T]he bare assertion of clouded title does not give rise to a duty to defend title under the covenant of

6

warranty."); *Erickson v. Chase*, 231 P.3d 1261, 1266 (Wash. Ct. App. 2010) ("It is ironic that, to win, the grantee must lose.").

Plaintiff's proposed reading—that a claim can be both lawful and unsuccessful—is contrary to law. Indeed, she does not cite any on-point caselaw from Tennessee (or elsewhere) to support her interpretation. The law is straightforward: To win against the grantor, the grantee must lose against the claimant. Mr. Ditto lost his claim and, thus, Mrs. Holliday cannot now prevail against HUD.

### V.     Conclusion

HUD contracted to "warrant and forever defend against the lawful claims of all persons, claiming same, by, through or under [HUD] but no further or otherwise." Pl.'s Ex. 2. The undisputed facts indicate that Mr. Ditto's title claim did not arise "by, through or under HUD" for three reasons. HUD was not responsible for—nor obligated to cure—the tax lien, and the tax sale occurred prior to Citi conveying the deed to HUD. Mr. Ditto's claim was also not "lawful" because Tennessee law equates lawfulness with success. Any one of these reasons independently disposes of this case in Defendant's favor. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's Cross-Motion for Summary Judgment is **DENIED**. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge